## Case No. 14,694.

### UNITED STATES v. BURR.[1]

[Coombs' Trial of Aaron Burr. 369; 2 Robertson's Report of the Trial of Aaron Burr, 481; 3 Carpenter's Report of Burr's Trial, 93.]

Circuit Court, D. Virginia. Sept. 3, 1807.

CRIMINAL LAW — ARREST AND REMOVAL OF ACCUSED—PROCESS—STATE LAWS—PRODUCTION OF PAPERS—LETTERS TO PRESIDENT—AFFIDAVIT—MILITARY EXPEDITION AGAINST NATION AT PEACE—EVIDENCE—ACTS OF CO-CONSPIRATORS—ACTS IN OTHER DISTRICTS.

[1. Where a person, after acquittal on an indictment for treason, is in the custody of the marshal, bound to answer an indictment for a misdemeanor, the court has no authority to send him to another district for trial for treason in the place where the crime was committed.]

[2. The laws of the several states cannot be regarded as rules of decision (Judiciary Act, § 34, 1 Stat. 92) in trials for offenses against the United States.]

[Cited in Clark v. Sohier, Case No. 2,835; U. S. v. New Bedford Bridge. Id. 15,867.]

[3. The circuit court of the United States, under section 4 of the judiciary act, has power to devise the process for bringing any person before it who has committed an offense of which it has cognizance, without reference to the process given by the state law.]

[Cited in Re Sheazle, Case No. 12,734.]

[4. A capias is the proper process to bring an accused in to answer to an indictment for an offense against the laws of the United States.]

[5. Where the accused is already in court, an order of the court will supply the place of a capias.]

[6. It is sufficient, in an affidavit, for the production of a paper in the possession of the prosecution, to aver that it "may be material" in the defense.]

[7. On a motion to compel the production of a letter written to the president of the United States, and in the hands of the prosecuting attorney, averred to be material to the defense, parts of it cannot be withheld, in the discretion of the prosecuting attorney, on the ground of public interest. The president alone may decide as to the propriety of withholding them, and he cannot delegate his discretion.]

[8. On the trial of an indictment for a misdemeanor, in beginning or setting on foot a military expedition against a nation at peace with the United States, containing no allusion to a conspiracy, the declarations of third persons, not forming a part of the transaction, and not made in the presence of the accused, are not admissible in evidence.]

[9. In such case the acts of accomplices, except so far as they prove the character or object of the expedition in question, are not admissible in evidence.]

[10. The acts of the accused in a different district, which constitute, in themselves, substantive causes for a prosecution, cannot be given in evidence, unless they go directly to prove the charges laid in the indictment.]

[11. Any legal testimony which shows the expedition in question to be military, or to have been designed against the dominions of the nation, as charged, is admissible.]

[At law. Trial of Aaron Burr for a misdemeanor, in beginning, setting on foot, and providing the means of, a military expedition against the dominions or territory of the king of Spain.]

At the meeting of the court on Wednesday, the 2d of September, 1807, Mr. Hay stated that according to his understanding of the opinion of the court delivered in the trial for treason [Case No. 14,693], the evidence of the transactions on Blennerhassett's Island did not come up to the constitutional crime of levying war; and so it would be improper to press the prosecution against Blennerhassett and Israel Smith. Under these circumstances he should enter a nolle prosequi as to the indictments for treason, and move to commit them, and also Mr. Burr, in order that they should be tried in the place where it should appear that the crime had been committed. He moved that Blennerhassett and Smith might be brought into court; and an order was made accordingly.

Mr. Burr then said that the motions were distinct against the several individuals, and they could not be combined. He insisted on a separate examination as to himself, and required a specification of the time and place when and where the offence was said to have been committed, that he might have an opportunity of meeting the testimony.

A debate of considerable length ensued on this motion.

MARSHALL, Chief Justice, finally remarked that as Col. Burr was now in custody of the marshal, and bound to answer an indictment for a misdemeanor, the court had no authority to send him to another district.

Mr. Hay said that all three were in the same situation, and the same difficulty applied to all. He regretted that the difficulty had not been adverted to at an earlier period, which would have saved much trouble; that he did not wish to disturb the opinion of the court, but would proceed with the trial of Col. Burr for a misdemeanor. He requested the clerk to read the indictment in the usual way, that they might proceed without issuing process to take the accused into custody, as he was in court.

The clerk was about to proceed, when Mr. Burr interrupted him, and said that he ought not to be arraigned, but to be permitted to plead by attorney. He said he was in court, not on that indictment, but because he had not moved to be discharged since his acquittal on the first indictment for treason. In this case he wished certain land-marks to be set up, in order to direct in future cases.

A protracted debate ensued, occupying the remainder of the day, in which Mr. Botts made a very long speech, and several of the counsel, on both sides, made shorter ones; all about the question whether a capias or a summons was the proper process to bring Col. Burr before the court, he being all the time in court, and participating in the debate.

[2] [MARSHALL, Chief Justice, said, that if

---

[1] [For references to the various cases in this series, which, together, embrace a full report of the entire proceedings against Aaron Burr, see note to Case No. 14,692a.]

[2] [From 2 Robertson's Report of the Trial of Aaron Burr, 481.]

a capias should be determined to be the proper process, he should consider the situation of the party, and direct that he should not be discharged till the cause was finally decided. If a capias should be considered not to be the proper process, a venire facias must be awarded. There was another consideration: If a venire facias issued, it would involve the right to a continuance of the cause till another term. He would consider that with the principal question.

[THE COURT took time to consider; and adjourned till to-morrow.

[Thursday, September 3, 1807.

[MARSHALL, Chief Justice. The question now before the court is whether bail be demandable from a person actually in custody, against whom an indictment for a misdemeanor has been found by a grand jury. As conducting directly to a decision of this point, the question has been discussed whether a summons or a capias would be the proper process to bring the accused in to answer the indictment, if, in point of fact, he were not before the court. It seems to be the established practice of Virginia in such cases to issue a summons in the first instance; and if by any act of congress the laws of the several states be adopted as the rules by which the courts of the United States are to be governed in criminal prosecutions, the question is at an end; for I should admit the settled practice of the state courts as the sound construction of the state law under which that practice has prevailed. The 34th section of the judicial act, it is contended, has made this adoption. The words of that section are "that the laws of the several states, except where the constitution, treaties or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply."

[It might certainly be well doubted whether this section (if it should be construed to extend to all the proceedings in a case where a reference can be made to the state laws for a rule of decision at the trial) can comprehend a case where, at the trial in chief, no such reference can be made. Now in criminal cases the laws of the United States constitute the sole rule of decision; and no man can be condemned or prosecuted in the federal courts on a state law. The laws of the several states therefore cannot be regarded as rules of decision in trials for offences against the United States. It would seem to me too that the technical term, "trials at common law," used in the section, is not correctly applicable to prosecutions for crimes. I have always conceived them to be, in this section, applied to civil suits, as contradistinguished from criminal prosecutions, as well as to suits at common law as contradistinguished from those which come before the court sitting as a court of equity or admiralty. The provi-

sion of this section would seem to be inapplicable to original process, for another reason. The case is otherwise provided for by an act of congress. The 14th section of the judicial act empowers the courts of the United States "to issue all writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law." This section seems to me to give this court power to devise the process for bringing any person before it who has committed an offence of which it has cognisance, and not to refer it to the state law for that process. The limitation on this power is, that the process shall be agreeable to the principles and usages of law. By which I understand those general principles and those general usages which are to be found not in the legislative acts of any particular state, but in that generally recognised and long established law, which forms the substratum of the laws of every state.

[Upon general principles of law it would seem to me that in all cases where the judgment is to affect the person, the person ought to be held subject to that judgment. Thus in civil actions, where the body may be taken in execution to satisfy the judgment, bail may be demanded. If the right of the plaintiff be supported by very strong probability, as in debt upon a specialty, bail is demandable without the intervention of a judge. If there be no such clear evidence of the debt, bail is often required upon the affidavit of the party. Now, reasoning by analogy from civil suits to criminal prosecutions, it would seem not unreasonable, where there is such evidence as an indictment found by a grand jury, to use such process as will hold the person of the accused within the power of the court, or furnish security that the person will be brought forward to satisfy the judgment of the court. Yet the course of the common law appears originally to have been otherwise. It appears from Hawkins that the practice of the English courts was to issue a venire facias in the first instance, on an indictment for a misdemeanor. This practice however is stated by Blackstone to have been changed. He says (volume 4, p. 319), "And so in the case of misdemeanors, it is now the usual practice for any judge of the court of king's bench, upon certificate of an indictment found, to award a writ of capias immediately, in order to bring in the defendant."

[It is then the English construction of the common law, that although in the inferior courts the venire facias might be the usual course, and although it had prevailed, yet that a judge of the king's bench might issue a capias in the first instance. This subject has always appeared to me to be in a great measure governed by the 33d section of the judicial act. That section provides, that for any crime or offence against the United States, the offender may, agreeably to the usual mode of process against offenders in that

state where he is found, be arrested and imprisoned or bailed as the case may be. This act contemplates an arrest, not a summons; and this arrest is to be, not solely for offences for which the state laws authorize an arrest, but "for any crime or offence against the United States." I do not understand the reference to the state law respecting the mode of process as overruling the preceding general words, and limiting the power of arrest to cases in which according to the state laws a person might be arrested, but simply as prescribing the mode to be pursued. Wherever, by the laws of the United States, an offender is to be arrested, the process of arrest employed in the state shall be pursued; but an arrest is positively enjoined for any offence against the United States. This construction is confirmed by the succeeding words: the offender shall be imprisoned or bailed as the case may be. There exists no power to direct the offender, or to bind him without bail, to appear before the court; which would certainly have been allowed had the act contemplated a proceeding in such a case which should leave the person at large without security. But he is absolutely to be imprisoned or bailed as the case may be.

[In a subsequent part of the same section it is enacted "that upon all arrests in criminal cases bail shall be admitted, except where the punishment may be death." There is no provision for leaving the person at large without bail; and I have ever construed this section to impose it as a duty on the magistrate who proceeds against any offender against the United States to commit or bail him. I perceive in the law no other course to be pursued. This section, it is true, does not respect the process upon an indictment. But the law would be inconsistent with itself if it required a magistrate to arrest for any offence against the United States, if it commanded him on every arrest to commit or to bail, and yet refused a capias and permitted the same offender to go at large, as soon as an indictment was found against him. This section therefore appears to me to be entitled to great influence in determining the court on the mode of exercising the power given by the 14th section in relation to process. On the impeachment which has been mentioned, this point was particularly committed to Mr. Lee, and the law upon it was fully demonstrated by him. The only difficulty I ever felt on this question was produced by the former decision of Judge Iredell. If the state practice on this subject had been adopted I should have held myself bound by that adoption. But I do not consider the state practice as adopted. Mundell's Case [Case No. 15,834] was a civil suit; and the decision was that the state rule respecting bail in civil actions must prevail. Sinclair's Case [unreported] was indeed a case similar to this; and in Sinclair's Case a venire facias was issued. But I am informed by the clerk that this was his act, at the instance of the attorney, not the act of the court. The point was not brought before the court.

[In U. S. v. Callender [Case No. 14,709] a capias, or what is the same thing, a bench warrant was issued. This was the act of the court; but, not having been an act on argument, or with a view of the whole law of the case and of former decisions, I should not have considered it as overruling those decisions if such existed. But there has been no decision expressly adopting the state practice; and the decision in Callender's Case [supra] appears to me to be correct. I think the capias the more proper process. It is conformable to the practice of England at the time of our Revolution, and is, I think, in conformity with the spirit of the 33d section of the judicial act. I shall therefore adopt it. To issue the capias to take into custody a person actually in custody would be an idle ceremony. In such a case the order of the court very properly supplies the place of a capias. The only difference between proceeding by capias and by order, which I can perceive, would be produced by making the writ returnable to the next term.] [3]

Mr. Hay then said he would proceed to the trial of the indictment for a misdemeanor.

Mr. Burr then referred to the letter which had been demanded of the president, which had often been promised but not yet produced. He wished to know whether that letter was in court.

Mr. Hay said he did not know whether the original letter was among his papers or not. He had searched for it, but had not been able to find it. He had a copy, which was ready to be produced.

Mr. Burr said the president had promised that the letter should be produced, and it was strange that it was not here. He was not disposed to admit a copy.

After some further remarks by counsel, the CHIEF JUSTICE said, unless the loss of the original be proved, a copy cannot be admitted.

Mr. Burr then called the attention of the court to the subject of bail, (made necessary by the decision that a capias was the proper process to bring him before the court.)

After some discussion, the CHIEF JUSTICE fixed the amount of the bail at five thousand dollars.

The counsel for the prosecution here took the alarm, that taking bail might entangle the motion intended subsequently to be made to commit for treason in another state. A debate on this subject of considerable length ensued, in the course of which the CHIEF JUSTICE remarked that those who prosecuted had the choice of making the motion to commit for a greater crime by discontinuing the prosecution for a misdemeanor, or of persevering in the latter.

At the close of this discussion, resulting in

[3] [From 2 Robertson's Report of the Trial of Aaron Burr, 481.]

nothing, Mr. Burr observed that he had discovered that a letter written by General Wilkinson on the 12th of November, 1806, to the president of the United States, was material to his defence.

Mr. Hay said he had that letter, and would produce it. But there were some matters in the letters of General Wilkinson which ought not to be made public. It would be extremely improper to submit the whole of his letters to public inspection. He was willing to put them in the hands of the clerk confidentially, and he could copy all those parts which had relation to the cause.

The counsel for Colonel Burr were not satisfied with this proposal. They demanded the whole letters.

Mr. Hay said he was willing that Mr. Botts, Mr. Wickham, and Mr. Randolph should examine them. He would depend on their candor and integrity to make no improper disclosures; and if there should be any difference of opinion as to what were confidential passages, the court should decide.

Mr. Martin objected to this as a secret tribunal. The counsel had a right to hear the letters publicly, without their consent.

Mr. Burr's counsel united in refusing to inspect anything that was not also submitted to the inspection of their client.

The CHIEF JUSTICE saw no real difficulty in the case. If there were any parts of the letters confidential, then a public examination would be very wrong; otherwise they ought to be read.

Mr. Hay said the president wrote to him when he understood the process had been awarded, that he had reserved to himself the province of deciding what parts of the letters ought to be published and what parts required to be kept secret; that they wished everything to be as public as possible except those parts which were really confidential. The discussion continued till the court adjourned.

### Friday, September 4, 1807.

Colonel Burr renewed his application for the production of the two letters from General Wilkinson to the president of the United States, for one of which a subpoena duces tecum had been awarded. He said that the president was in contempt, and he had a right to demand process of contempt against him; but as it would be unpleasant to resort to such process, and it would produce delay, he hoped the letters would be produced. It might, perhaps, suffice to produce a copy, if duly authenticated, of that of October 21st, which was said to be lost or mislaid. As to the letter of the 12th of November, he had reason to believe that the whole letter had been shown to others to injure him, and as the whole letter had been used against him, the whole ought to be produced.

Mr. Hay said he did not know what was meant by the expression of such a belief or suspicion.

Mr. Burr said he would be more explicit; and asked whether this letter had not been used against him before the grand jury.

Mr. Hay said he could not be certain whether it was produced before the grand jury or not. He was not as well acquainted with what passed before the grand jury as some other gentlemen were.

A long and excited debate ensued, in which Mr. Burr's counsel insisted on the production of the whole letter, and Mr. Hay insisted on withholding certain passages. He said there were two passages in the letter which he could not submit to public inspection; and he did know that they could be extorted from him under any circumstances. Finally, the counsel of Colonel Burr applied for a subpoena duces tecum to Mr. Hay, which was awarded. To this Mr. Hay made a return, tendering a copy of the letter of 12th November, 1806, "excepting such parts thereof as are, in my opinion, not material for the purposes of justice, for the defence of the accused, or pertinent to the issue now about to be joined; the parts excepted being communicated to the president, and he having devolved on me the exercise of that discretion which constitutionally belongs to himself. The accuracy of this opinion I am willing to refer to the judgment of the court, by submitting the original letter to its inspection. I further certify, in order to show more clearly the irrelevancy of the parts excepted to any defence which can be set up in the present case, that these parts contain a communication of the opinion of the writer concerning certain persons, about which opinion, or the fact of his having communicated it, the writer, if a witness before the court, could not legally, as I conceive, be interrogated; and about which no evidence could legally be received from other persons."

The CHIEF JUSTICE asked if there were any objections to this return.

Mr. Burr said he could not be satisfied with a copy of part of the letter.

Mr. Botts said it would be a matter of the deepest regret if an attachment should go against Mr. Hay, and nothing would give him greater pain than to be under the necessity of making such a motion. To avoid this, there was another alternative, but which was, also, extremely disagreeable, as it would produce delay, viz: To move that the cause should be continued until the letter should be produced. He made that motion, and supported it by a speech of considerable length.

Other counsel followed, in a protracted debate on the motion. When the discussion ended the CHIEF JUSTICE delivered the following opinion:

MARSHALL, Chief Justice. [4] [It is not without regret that I find myself constrained to deliver an opinion on the present application. To overrule the motion may, at least, have the appearance of imposing a hardship

---

[4] [From 2 Robertson's Report of the Trial of Aaron Burr, 533.]

on the prisoner, and to grant it may occasion delay in a case which all must desire to terminate. It is with regret that I decide a question under such circumstances, because it is probable that those parts of the letter which are withheld, are of much less importance than gentlemen suppose; and that the effect of their production would be to dissipate suspicions which are now entertained, and to show that the subject of the controversy is by no means proportioned to the zeal with which it has been maintained. Upon an affidavit made by the accused, a subpœna duces tecum has been awarded to the president of the United States, requiring the production of this letter. In consequence of this process the letter was transmitted to the attorney for the United States, accompanied with a communication from the president, authorizing the attorney to exercise his discretion in the case. In the exercise of this discretion, he has selected certain parts of the letter which he has determined to withhold, because he believes them to be confidential, and therefore such as ought not to be exhibited in public. If this might be likened to a civil case, the law is express on the subject. It is that either party may require the other to produce books or writings in their possession or power, which contain evidence pertinent to the. issue. In this respect the courts of law are invested with the power of a court of chancery, and if the order be disobeyed by the plaintiff, judgment as in the case of a nonsuit may be entered against him.

[Now. if a paper be in possession of the opposite party, what statement of its contents or applicability can be expected from the person who claims its production, he not precisely knowing its contents? If the opposite party be required to produce his books on a particular subject, it is not necessary that the entries on those books should be stated in order to entitle the applicant to his motion. He cannot be expected to make such a statement. It has always been deemed sufficient to describe the paper required, to express its general purport, and to state its materiality to the case in some degree, even when its contents are known. When a paper is in possession of one party, it is completely in his power, and is required by the other, very strong reasons must be given to justify its being withheld, if it have any relation to the case. Before a court would make a decisive order in such a case it certainly ought to receive reasonable satisfaction of the probable materiality of the evidence asked for and refused, and of its relation to the pending controversy; but the information to be required must depend on the nature of the case.

[Criminal cases, it is true, are not provided for; but courts will always apply the rules of evidence to criminal prosecutions so as to treat the defence with as much liberality and

tenderness as the case will admit. The prosecutor is the representative of the government, and the government acts as a party through the agency of the attorney, who directs and manages the prosecution on behalf of government. If there be a paper in the possession of the executive, which is not of an official nature, he must stand, as respects that paper, in nearly the same situation with any other individual who possesses a paper which might be required for the defence. If the executive possess a paper which is really believed by the accused to be material to his defence, ought it to be withheld? The question will recur, is it really material to his defence? The only evidence that can be received on this point is from the party himself, and he has made his affidavit to its materiality. But that is said to be insufficient; and why? Because the averment is, that the letter "may be material" in the defence. Until the course of the prosecution shall be fully developed, it may not be in the power of the accused to make a more positive averment. The importance of the letter to the defence, may depend on the testimony adduced by the prosecutor. But there were two indictments: the one for treason and the other for a misdemeanor, and the allegation of materiality made in the affidavit may, it is said, refer to either indictment. But the prosecution for treason is terminated, and was terminated before the affidavit was made. Consequently it can relate only to the indictment for a misdemeanor. It is objected that the particular passages of the letter which are required are not pointed out. But how can this be done while the letter itself is withheld? Or how can their applicability be shown without requiring the accused prematurely to disclose his defence?

[Let it be supposed that the letter may not contain anything respecting the person now before the court. Still it may respect a witness material in the case, and become important by bearing on his testimony. Different representations may have been made by that witness, or his conduct may have been such as to affect his testimony. In various, modes a paper may bear upon the case, although before the case be opened its particular application cannot be perceived by the judge. That the president of the United States may be subpœnaed, and examined as a witness, and required to produce any paper in his possession, is not controverted. I cannot, however, on this point, go the whole length for which counsel have contended. The president, although subject to the general rules which apply to others, may have sufficient motives for declining to produce a particular paper, and those motives may be such as to restrain the court from enforcing its production. I do not think precisely with the gentlemen on either side. I can readily conceive that the president might receive a letter which it would be improper to exhibit

in public, because of the manifest inconvenience of its exposure. The occasion for demanding it ought, in such a case, to be very strong, and to be fully shown to the court before its production could be insisted on. I admit, that in such a case, much reliance must be placed on the declaration of the president; and I do think that a privilege does exist to withhold private letters of a certain description. The reason is this: Letters to the president in his private character, are often written to him in consequence of his public character, and may relate to public concerns. Such a letter, though it be a private one, seems to partake of the character of an official paper, and to be such as ought not on light ground to be forced into public view.

[Yet it is a very serious thing, if such letter should contain any information material to the defence, to withhold from the accused the power of making use of it. It is a very serious thing to proceed to trial under such circumstances. I cannot precisely lay down any general rule for such a case. Perhaps the court ought to consider the reasons which would induce the president to refuse to exhibit such a letter as conclusive on it, unless such letter could be shown to be absolutely necessary in the defence. The president may himself state the particular reasons which may have induced him to withhold a paper, and the court would unquestionably allow their full force to those reasons. At the same time, the court could not refuse to pay proper attention to the affidavit of the accused. But on objections being made by the president to the production of a paper, the court would not proceed further in the case without such an affidavit as would clearly shew the paper to be essential to the justice of the case. On the present occasion the court would willingly hear further testimony on the materiality of the paper required, but that is not offered.

[In no case of this kind would a court be required to proceed against the president as against an ordinary individual. The objections to such a course are so strong and so obvious, that all must acknowledge them. But to induce the court to take any definite and decisive step with respect to the prosecution, founded on the refusal of the president to exhibit a paper, for reasons stated by himself, the materiality of that paper ought to be shown. In this case, however, the president has assigned no reason whatever for withholding the paper called for. The propriety of withholding it must be decided by himself, not by another for him. Of the weight of the reasons for and against producing it, he is himself the judge. It is their operation on his mind, not on the mind of others, which must be respected by the court. They must therefore be approved by himself, and not be the mere suggestions of another for him. It does not even appear to the court that the president does object to the production of any part of this letter. The objection, and the reasons in support of the objection, proceed from the attorney himself, and are not understood to emanate from the president. He submits it to the discretion of the attorney. Of course, it is to be understood that he has no objections to the production of the whole, if the attorney has not. Had the president, when he transmitted it, subjected it to certain restrictions, and stated that in his judgment the public interest required certain parts of it to be kept secret, and had accordingly made a reservation of them, all proper respect would have been paid to it; but he has made no such reservation. As to the use to be made of the letter, it is impossible that either the court, or the attorney can know in what manner it is intended to be used. The declarations therefore made upon that subject can have no weight. Neither can any argument on its materiality or immateriality drawn from the supposed contents of the parts in question. The only ground laid for the court to act upon is the affidavit of the accused; and from that the court is induced to order that the paper be produced, or the cause be continued. In regard to the secrecy of these parts which it is stated are improper to give out to the world, the court will take any order that may be necessary. I do not think that the accused ought to be prohibited from seeing the letter; but, if it should be thought proper, I will order that no copy of it be taken for public exhibition, and that no use shall be made of it but what is necessarily attached to the case. After the accused has seen it, it will yet be a question whether it shall go to the jury or not. That question cannot be decided now, because the court cannot say whether those particular passages are of the nature which are specified. All that the court can do is to order that no copy shall be taken; and if it is necessary to debate it in public, those who take notes may be directed not to insert any part of the arguments on that subject. I believe, myself, that a great deal of the suspicion which has been excited will be diminished by the exhibition of this paper.] [5]

Mr. Hay said he would consult Gen. Wilkinson, and if he consented, he would produce the letter under the restrictions suggested by the court—preferring that to a continuance of the cause.

On Saturday, the 5th of September, Mr. Hay stated to the court that he would immediately send an express to Monticello (where the president then was) for instructions in relation to producing the letter, and that he would probably get a return by Tuesday evening.

On Wednesday, the 9th of September, a

5 [From 2 Robertson's Report of the Trial of Aaron Burr, 533.]

jury was empanneled and sworn, just one week having been consumed in the preliminary proceedings hereinbefore briefly noticed.

On the same day, Mr. Hay presented a certificate from the president, annexed to a copy of Gen. Wilkinson's letter, excepting such parts as he deemed he ought not to permit to be made public.

The clerk read the indictment, consisting of seven counts, all charging the defendant in slightly variant forms, with beginning, setting on foot, or providing the means of a military expedition against the dominions or territory of the king of Spain.

In all the counts the offence was charged to have been committed at Blennerhassett's Island, in the county of Wood, and district of Virginia.

The trial then proceeded, and in the course of it the counsel for the prosecution offered in evidence declarations of Blennerhassett tending to implicate Colonel Burr, and endeavored to support it by alleging: 1st, a conspiracy between these two and others; and that the declarations of one conspirator were evidence against the others; or, 2d, that they were accomplices. They also offered in evidence acts of the nature laid in the indictment, committed by the defendant in Ohio and Kentucky, all of which was objected to.

[The argument on the admissibility of the testimony lasted several days, at the close of which]

[6] [MARSHALL, Chief Justice, delivered the following opinion:

[The present motion is particularly directed against the admission of the testimony of Neale, who is offered for the purpose of proving certain conversations between himself and Herman Blannerhasset. It is objected that the declarations of Herman Blannerhasset are at this time inadmissible on this indictment. The rule of evidence which rejects mere hearsay testimony, which excludes from trials of a criminal or civil nature the declarations of any other individual than of him against whom the proceedings are instituted, has been generally deemed all essential to the correct administration of justice. I know not why a declaration in court should be unavailing, unless made upon oath, if a declaration out of court was to criminate others than him who made it; nor why a man should have a constitutional claim to be confronted with the witnesses against him, if mere verbal declarations, made in his absence, may be evidence against him. I know of no principle in the preservation of which all are more concerned. I know none, by undermining which, life, liberty and property, might be more endangered. It is there-

[6] [From 3 Carpenter's Report of Burr's Trial, 93.]

fore incumbent on courts to be watchful of every inroad on a principle so truly important. This rule as a general rule is permitted to stand, but some exceptions to it have been introduced, concerning the extent of which a difference of opinion prevails, and that difference produces the present question.

[The first exception is, that in cases of conspiracy, the acts, and it is said by some, the declarations of all the conspirators, may be given in evidence on the trial of any one of them, for the purpose of proving the conspiracy, and this case it is alleged, comes within the exception. With regard to this exception, a distinction is taken in the books between the admissibility and operation of testimony, which is clear in point of law, but not at all times easy to practice in fact. It is, that although this testimony be admitted, it is not to operate against the accused, unless brought home to him by testimony drawn from his own declarations or his own conduct. But the question to be considered is, does the exception comprehend this case? Is this a case of conspiracy according to the well-established law meaning of the term? Cases of conspiracy may be of two descriptions. 1st. Where the conspiracy is the crime, in which case the crime is complete although the act should never be performed, and in such cases if several be indicted, and all except one be acquitted, that one cannot, say the books, be convicted, because he cannot conspire alone. 2d. Where the crime consists in the intention, and is proved by a conspiracy, so that the conviction of the accused may take place upon evidence, that he has conspired to do an act which manifests the wicked intention. In both these cases an act is not essential to the completion of the crime, and a conspiracy is charged in the indictment as the ground of accusation. If the conspiracy be the sole charge, as it may be, the question to be decided, is, not whether the accused has committed any particular fact, but whether he has conspired to commit it. Evidence of conspiracy in such a case goes directly to support the issue. It has therefore been determined that the nature of the conspiracy may be proved by the transactions of any of the conspirators in furtherance of the common design; the degree of guilt, however, of the particular conspirator upon trial, must still depend on his own particular conduct.

[In the case at bar, the crime consists not in intention but in acts. The act of congress does not extend to the secret design, if not carried into open deed, nor to any conspiracy, however extensive, if it do not amount to a beginning or setting on foot a military expedition. The indictment contains no allusion to a conspiracy, and of consequence the issue to be tried by the jury is not whether the conspiracy has taken place, but whether the particular facts charged in the indictment have been committed. I do not mean to admit, that by any course which might

· have been given to the prosecution, this could have been converted into a case of conspiracy; but most assuredly if it was intended to prove a conspiracy, and to let in that kind of testimony which is admissible only in such a case, the indictment ought to have charged it. I have not been able to find in the books a single decision, or a solitary dictum which would countenance the attempt that is now made to introduce as testimony the declarations of third persons, made in the absence of the person on trial, under the idea of a conspiracy, where no conspiracy is alleged in the indictment. The researches of the counsel for the prosecution have not been more successful. But they suppose this case, though not within the letter, to come clearly within the reasoning of those cases where this testimony has been allowed. It has been said, that wherever the crime may be committed by a single individual, although in point of fact more than one should be concerned in it, as in all cases of felony, the prosecution must be conducted in the usual mode, and the declarations of third persons cannot be introduced at a trial; but whenever the crime requires more than one person, where from its nature it cannot be committed by a single individual, although it shall consist, not in conspiracy, but in open deed, yet it is in the nature of a conspiracy, and evidence of the declarations and acts of third persons connected with the accused may be received whether the indictment covers such testimony or not. I must confess that I do not feel the force of this distinction. I cannot conceive why, when numbers do in truth conspire to commit an act, as murder or robbery, the rule should be, that the declaration of one of them is no evidence against another. and yet, if the act should require more than one for its commission, that the declarations of one person engaged in the plot would immediately become evidence against another. I cannot perceive the reason of this distinction; but, admitting its solidity, I know not on what ground to dispense with charging in the indictment the combination intended to be proved. If this combination may be proved by the acts or declarations of third persons made in the absence of the accused, because he is connected with those persons; if in consequence of this connection the ordinary rules of evidence are to be prostrated, it would seem to me that the indictment ought to give some notice of this connection. When the terms used in the indictment necessarily imply a combination, it will be admitted that a combination is charged and may be proved. And where A., B., and C. are indicted for murdering D., yet in such a case the declarations of one of the parties made in the absence of the others have never been admitted as evidence against the others. If then this indictment should even imply that the fact charged was committed by more than one person, I cannot conceive that the declarations of a particeps criminis would become admissible on the trial of a person not present when they were made. unless those declarations form a part of the very transaction charged in the indictment.

[If in all this I should be mistaken, yet it remains to be proved that the offence charged may not be committed by a single individual. This may, in some measure depend on the exposition of the terms of the act; and it is to be observed that this exposition must be fixed. It cannot vary with the varying aspect of the prosecution at its different stages. If, as has been said, a military expedition is begun or set on foot when a single soldier is enlisted for the purpose, then unless it be begun as well by the soldier who enlists, as by the officer who enlists him, a military expedition may be begun by a single individual. So if those who engage in the enterprize follow their leader from their confidence in him, without any knowledge of the real object, there is no conspiracy, and the criminal act is the act of an individual. So, too, if the means are any means, the crime may unquestionably be committed by any individual. Should the term be even so construed as to imply that all the means must be provided before the offence can be committed. still all the means may, in many cases. be provided by a single individual. The rule then laid down by the counsel for the prosecution. if correct in itself, would not comprehend this case.

[Secondly, there are also cases in the books where acts are in their nature joint, and where the law attaches the guilt to all concerned in their commission, so that the act of one is in truth the act of others, where the conduct of one person in the commission of the fact constitutes the crime of another person; but this is distinct from conspiracy. If many persons combine to commit a murder, and all assist in it, and are actually or constructively present, the act of one is the act of all, and is sufficient for the conviction of all. So in acts of levying war, as in the Cases of Damane and Purchase, the acts of the mob were the acts of all in the mob whose conduct showed a concurrence in those acts, and in the general design, which the mob were carrying into execution. But these decisions turn on a distinct principle from conspiracy. The crime is a joint crime, and all those who are present aiding in the commission of it participate in each other's actions, and in the guilt attached to those actions. The conduct of each contributes to shew the nature of this joint crime; and declarations made during the transaction are explanatory of that transaction; but I cannot conceive that in either case declarations unconnected with the transaction would have been evidence against any other than the person who made them, or persons in whose presence they were made. If, for example, one of several men who had united in com-

mitting a murder should have said, that he with others contemplated the fact which was afterwards committed, I know of no case which would warrant the admission of this testimony upon the trial of a person who was not present when the words were spoken. So if Damane had previously declared that he had entered into a confederacy for the purpose of pulling down all meeting houses, I cannot believe that this testimony would have been admissible against a person having no knowledge of the declaration and giving no assent to it. In felony the guilt of the principal attaches to the accessory, and therefore the guilt of the principal is proved on the trial of the accessory. In treason, all are principals, and the guilt of him who has actually committed the treason does, in England, attach to him who has advised, aided or assisted that treason. Consequently the conduct of the person who has perpetrated the fact must be examined on the trial of him who has advised or procured it. But in misdemeanors by statute, where the commission of a particular fact constitutes the only crime punished by the law, I believe there is no case where the declaration of a particeps criminis can affect any but himself.

[Thirdly. The admission of the declarations of Mr. Blannerhasset may be insisted upon under the idea he was the agent of Col. B. How far the acts of one man may affect another criminally, is a subject for distinct consideration, but I believe there is no case where the words of an agent can be evidence against his principal on a criminal prosecution. Could such testimony be admissible, the agency must be first clearly established, not by the words of the agent, but by the acts of the principal, and the word must be within the power previously shown to have been given.

[The opinions of the circuit court of New York in trials of Smith and Ogden have been frequently mentioned. [Case No. 16,342.] Although I have not the honor to know the judge who gave those decisions, I consider them as the determination of a court of the United States, and I shall not be lightly induced to disregard them, or unnecessarily to treat them with disrespect. I do not, however, in the opinions of Judge Talmadge, perceive any expression indicating that the declarations of third persons could be received as testimony against any individual who was prosecuted under this act. If he has given that opinion, it has certainly escaped my notice, and has not been suggested to me by counsel. He unquestionably says in page 113 of the trial "that the reference which was made to the doctrine of conspiracy did not apply in that case." The reference alluded to was the observation of Mr. Emmet, who had said "that, if the object was to charge Col. Smith with the acts of Capt. Lewis, they ought to have laid the indictment for a conspiracy." The opinion of the judge that the doctrine of conspiracy had no application to the case, appears to me to be perfectly correct.

[I feel, therefore, no difficulty in deciding, that the testimony of Mr. Neale, unless he can go further than merely stating the declarations made to him by Blannerhasset, is at present inadmissible. But the argument has taken a much wider range. The points made, comprehend the exclusion of other testimony suggested by the attorney for the United States, and the opinion of the court upon the operation of testimony. As these subjects are entirely distinct, and as the object of the motion is the exclusion of testimony supposed to be illegal, I shall confine my observations to that part of the argument which respects the admissibility of evidence of the description of that proposed by the attorney for the United States. The indictment charges the accused in separate counts with beginning, with setting on foot, with preparing, and with providing the means for a military expedition to be carried on against a nation at peace with the United States. Any legal testimony which applies to any one of these counts is relevant. That which applies to none of them must be irrelevant. The expedition, the character and object of that expedition, that the defendant began it, that he set it on foot, that he provided and prepared the means for carrying it on, are all charged in the indictment, and consequently these charges may be all supported by any legal testimony. But that a military expedition was begun and set on foot by others, or that the means were prepared or provided by others, is not charged in this indictment, is not a crime which is or can be alleged against the defendant, and testimony to that effect is therefore not relevant. All testimony which serves to show the expedition to have been military in its character, as, for instance, testimony respecting their arms and provisions, no matter by whom purchased, their conduct, no matter by whom directed, or who was present, all legal testimony which serves to show the object of the expedition, as would be either actually marching against Mexico, any public declarations made among themselves stating Mexico as their object, any manifesto to this effect, any agreement entered into by them for such an expedition, these or similar acts would be received to show the object of the expedition.

[In trials of Smith and Ogden they were received. Whether the particular acts of the accused on which his guilt or innocence depends, must precede this species of testimony or may be preceded by it, is a question which merely respects the order of evidence. There can be no doubt but that at some stage of the prosecution, either before or after the particular part performed by the accused has been shown, the character and object of the expedition may be shown, and that by any legal testimony calculated to develope that character and object. Whether this testimony is admissible before the proof which particularly applies to the part performed by the accused, or ought to be introduced by first proving that

part, is a question which is not made in this case, and which was not made in the case of Smith and Ogden. In that case it was certainly entirely unimportant, and it is probably not less so in this. It has been also contended that the acts no more than the declarations of third persons can be given in evidence on this indictment. It has been already said that those acts of equipment which go to show the character of the expedition may be given in evidence. If, for example, Blannerhasset, Tyler, Smith, or any other persons, provided arms, ammunition or provisions which were applied to the armament, this would be evidence, because it would show the character of the expedition. This was done in the case of Smith and Ogden, without en-quiring who provided the arms, for they belonged to the expedition. Captain Lewis, for instance, purchased several military equipments. It was not deemed necessary to show that Smith was connected with Lewis, for these purchases were made for the expedition, and Smith was not charged with providing them. He was charged with providing other means; and the means provided by Lewis served to show the character of the expedition. But although the acts of all persons providing means applied to the expedition may be given in evidence upon the same principle that the state of the expedition may be shown, it does not follow that other acts of third persons may be given in evidence. It has also been contended that no transactions out of the district are testimony. This position is correct to a considerable extent, but not to the extent in which it is laid down. A declaration of Mr. Burr, for example, made in Kentucky or elsewhere, that he did not set on foot a military expedition on Blannerhasset's Island to be carried on against the dominions of the king of Spain while the United States were at peace with that power, would I think be evidence. So would the actual marching of the troops proved to be raised by him against the province of Mexico. Testimony which goes directly to prove the indictment may, I think, be drawn from any place. But I do not understand this to be the point really in contest. I understand the counsel of the United States to insist that providing means in Kentucky, that enlisting men in Kentucky, that joining the expedition in Kentucky, may be given in evidence to show that the accused did begin and set on foot the expedition in Blannerhasset's Island, or did provide the means at that place as charged in the indictment. This I understand to be the great question which divides the prosecution and defence.

[It is I believe a general rule in criminal prosecutions that a distinct crime for which a prosecution may be instituted cannot be given in evidence in order to render it more probable that the particular crime charged in the indictment was committed. If gentlemen think me wrong in this, I will certainly hear them upon the point, but I believe the position to be correct. Now providing the means for a military expedition in Kentucky to be carried on against the dominions of a prince with whom the United States are at peace, is certainly in itself a distinct offence, upon which an indictment may be as well supported as it can be for providing means for the same or a similar expedition in Virginia. According to the rule laid down then, this testimony cannot be received unless it goes to prove directly the charges contained in the indictment. But how can it go directly to prove those charges? Does it follow that the man who has provided the means in Kentucky has also provided the means in Virginia? Certainly it does not follow; and consequently the acts alleged in Kentucky do not prove the charges contained in the indictment. They would prove the defendant to have been connected in the enterprize, and gentlemen argue as if they thought this sufficient for their purpose. I shall be excused if I employ a few moments in stating my reasons for thinking it not sufficient. I have already said, and surely no man will deny, that two distinct persons may at different places furnish different means for the same enterprize. It will, I presume, not be contended that one of them may be indicted for the means provided by the other. So, too, if the same man shall provide means for the enterprize at different places, as in Virginia and Kentucky. I do not imagine that an indictment for providing arms in Virginia could be supported by proving that he provided ammunition in Kentucky. They are distinct offences, for either of which he may be punished, and the commission of one may render more probable, but does not prove, the commission of the other. How do gentlemen mean to make this testimony more relevant? It is by making the acts of Blannerhasset, Tyler and Smith, the acts of Burr, by insisting that their acts show an unlawful expedition to have been begun by him in Virginia, or that the means for that expedition were provided by him in Virginia. This being accomplished, his acts in Kentucky may be adduced to corroborate or confirm the testimony which discloses his conduct in Virginia. As preliminary then to this testimony, such proof of the specific charges contained in the indictment must be given, as may be left to the consideration of the jury. This proof relates to place as well as to fact. "Of whatsoever nature an offence indicted may be," says Hawkins (2 Hawk. P. C. c. 25, § 35), "whether local or transitory, as seditious words or battery, &c., it seems to be agreed that if, upon not guilty pleaded, it shall appear that it was committed in a country different from that in which the indictment was found, the defendant shall be acquitted." This rule is the stronger in the United States, where it is affirmed by the constitution itself, and where the jurisdiction of the court is limited to offences within the district. Its obligation therefore is complete. If there be any direct testimony that an expedition was begun, or set on foot, or that the

means were provided or prepared in Virginia, that testimony has not yet been heard, so far as I recollect. If there be such testimony it must also be shown that the expedition was begun, or that the means were prepared by the accused. No single act of his in Virginia has been offered in evidence. He made a contract in the state of Ohio for boats and provisions, which may have been intended as a part of the expedition, but no contract appears to have been made in Virginia, nor were the boats constructed or provisions procured in Virginia. How then is it to appear that he begun or set on foot a military expedition in Virginia, or that he provided or prepared the means for such an expedition? It is said, that if he gave orders from Kentucky or elsewhere, and in consequence of those orders the means were provided in Virginia, the accused is within the letter of the act, as well as its spirit, and has himself provided the means in Virginia. If these orders were in proof, the court as well as the counsel would be enabled to view the subject with more accuracy, and to treat it with more precision. Since those orders are not adduced, nor accurately stated, and the question has been argued without them, the court must decline giving any opinion, or consider the orders as offered, and say what orders would be admissible and what inadmissible. The latter course may save the bar the trouble of another argument. To whom are orders supposed to have been given, and who are supposed to have executed them? They must have been given to accomplices or to those who had no share in the expedition.

[The accomplices, under the direction of Col. Burr, have provided the means. Can their liability to the penalties of the law be doubted? I presume not. If persons engaged in the expedition have provided the means for carrying it on, it will, I presume, be admitted that they are within the letter and the spirit of the act. Each man has himself provided and prepared those particular means which he has furnished. If Col. Burr, as was the case with Col. Smith, has supplied money for the expedition, then money may be charged as the means provided by him; but, if that money was advanced to an accomplice, its investment in means for the expedition is the act of the accomplice, for which, being a free agent, he is himself responsible. The accomplice has committed the very act which the law punishes. Has the accused, by suggesting or procuring that act, also committed it? I will not say how far the rule, that penal laws must be construed strictly, may be carried without incurring the censure of disregarding the sense of the legislature. It may, however, be safely affirmed that the offence must come clearly within the description of the law according to the common understanding of the terms employed, or it is not punishable under the law. Now, to do an act, or to advise or procure an act, or to be connected or leagued with one who does that act, are not the same in either

law, language, or in common parlance; and, if they are not the same, a penalty affixed to the one is not necessarily affixed to the other. The penalty affixed to the act of providing the means for a military expedition is not affixed to the act of advising or procuring those means to be provided, or of being associated with the man who has provided them. The distinction made by the law between these persons is well settled, and has been too frequently urged to require further explanation. The one is a principal, the other an accessory. In all misdemeanors punishable only by a statute which describes as the sole offender the person who commits the prohibited act, the one is within and the other not within the statute. In passing the act under consideration, congress obviously contemplated this distinction. I presume that in a prosecution under the 3d section, for fitting out a privateer, it would not be alleged that a person who was concerned with the man who actually fitted out the privateer, but who performed no act himself, could be convicted on an indictment, not for being concerned in fitting out the privateer, but for actually fitting her out. These are stated in that section as separate offences. This distinction taken in the law is well understood, and cannot be considered as overlooked by those who frame penal acts. They cannot be considered as intending to describe one offender when they describe another, and, if experience suggests defects in the Penal Code, the legislature exclusively judges how far those defects are to be remedied. While expounding the terms of the act, it may not be improper to notice an argument advanced by the attorney for the United States which was stopped by my observing that he had not correctly understood the opinion delivered in the case of treason. He understood that opinion as approving the doctrine laid down by Keeling and Hale, that an accessory before the fact might plead, in bar of an indictment as accessory, that he had been acquitted as principal, whence it was inferred that, on an indictment for doing an act, evidence of advising or producing that act might be received. I was certainly very far from approving this doctrine. On the contrary, I declared it to contradict every idea I had ever formed on the subject. But, if it were correct, I endeavored to show that it could not affect that case. My disapprobation of the doctrine induced me to look further into it, and my persuasion that it is not law is confirmed. 2 Hale, P. C. p. 292, says: "If A. and B. be indicted of the murder of C., upon their evidence it appears that A. committed the fact and B. was not present but was accessory before the fact by commanding it, B. shall be discharged." In 2 Hawk. P. C. c. 85, § 11, Hawkins discusses the subject, shows in a note the contradiction in those authorities which maintain the doctrine, cites the opposing authorities, and obviously approves the opinion which is here given. It is apparent, then, that the law never considers the

commission and the procurement of an act, even where both are criminal, as the same act.

[I cannot, therefore, consider means provided by those who are his accomplices in the expedition, as means provided by Col. Burr. If the means were provided by order of the accused, by persons not accomplices and not guilty under the act, the law may be otherwise. I shall not exclude such testimony. There is, however, some doubt whether the place of trial should be where the orders were given, or where they were executed. At common law, if an act was procured or advised at one place, and executed at another, it was doubted whether the procurer could be tried at either place, because the offence was not complete at either. This difficulty was removed by a statute made in the reign of Edward VI. If there be testimony showing, by orders from the accused, means were provided in Virginia by a person not an accomplice, it may be received, and the question respecting the scene of trial put in way for a final decision. The question whether all the means must be provided before the offence described in the statute has been committed, relates to the effect rather than to the exclusion of the testimony. I shall certainly not reject any evidence which shows that any means were provided by the accused in the place charged in the indictment. Upon the subject of beginning and setting on foot a military expedition or enterprize, it would be unnecessary at this time to say anything, were it not on the account of the question respecting the introduction of testimony of the district. What is an expedition? What is an enterprize? An expedition, if we consult Johnson, is "a march or voyage with martial intentions." In this sense, it does not mean the body which marches, but the march itself. The term is, however, sometimes employed to designate the armament itself, as well as the movement of that armament. An enterprize is "an undertaking of hazard, an arduous attempt." The proper meaning of this word also describes the general undertaking, and not the armament with which that undertaking is to be accomplished.

[The first count in the indictment charges that Burr began the expedition in "Blannerhassett's Island; the second and third, that he set on foot the enterprize on Blannerhassett's Island. If the term expedition is to be taken in its common and direct sense,—that is, to mean a march or voyage with martial intentions,—it began where that march or voyage begun; and it must have been begun by the accused to bring him within the act. If the term be taken in its figurative sense to designate the armament instead of the movement of the armament, then I cannot readily conceive an act which begins an expedition, unless the same act may also be said to provide the means of an expedition. The formation of the plan in the mind is not the commencement of the expedition, within the act. Our laws punish no mental crimes not brought into open deed. The disclosure of that plan does not begin it. If it did, the first disclosure would be the beginning. I find a difficulty in conceiving any act which amounts to providing the means for an expedition. However, if there can be such an act, and it has been committed in Virginia, it may certainly be given in evidence. The same observations apply to setting on foot an enterprize. These remarks are made to show what it will be necessary to prove in order to let in corroborative proof.

[It is then the opinion of the court, that the declarations of third persons not forming a part of the transaction, and not made in the presence of the accused, cannot be received in evidence in this case. That the acts of accomplices, except so far as they prove the character or object of the expedition, cannot be given in evidence. That the acts of the accused, in a different district, which constitute in themselves substantive causes for a prosecution, cannot be given in evidence unless they go directly to prove the charges laid in the indictment. That any legal testimony which shows the expedition to be military, or to have been designed against the dominions of Spain, may be received. Gentlemen well know how to apply these principles. Should any difficulty occur in applying them, the particular case will be brought before the court and decided.

[After the opinion was delivered, Mr. Hay requested a copy of it, and made some observations as to its effect upon the future progress of the trial. He considered that the man who had the supreme command and direction of this military enterprize (which they could prove it to be) did provide the means and set it on foot. This was a question he thought proper for the consideration of the jury, and this idea would be strengthened by evidence which could be produced, if permitted.

[Mr. Wirt. The fact is, that Mr. Belknap can prove (as well as others) that he sent orders and did other acts showing that he was at the head and command of the whole.

[The CHIEF JUSTICE. But suppose the connection was proved (which I have no doubt could be), and suppose the enterprize originated with Col. Burr (which is very probably the case), others might have provided the means, from what could be made to appear. He is not indicted for being connected with the enterprize, but for providing certain specific means. If the party under Tyler is to be considered as of a military nature, and that an expedition began at Beaver, or where not, if the movement is to be considered as an enlistment of men, then, wherever the first movement was made, there the expedition began. I do not think that his taking the command at Cumberland can be considered as a count in the indictment; it might go to render it more probable (if

there was any doubt as to the transaction) that what was done was under his control; but the act itself must be proved on Blannerhasset's Island; and there the intention with which that act was done would come in by proving that he took the command afterwards. But how can he be charged with beginning there, if it should appear that he began in Pennsylvania? The question of "beginning" I do not mean to take from the jury; of the place of beginning and of the acts themselves, they must decide. An abstract, independent question will arise, however, which is, whether the witnesses proved the indictment or not? Now I do not think that they did prove the indictment. What might be done is a future question.

[Mr. Wirt. Am I to understand, sir, that the acts of accomplices, out of the district, tending to prove the acts laid in the indictment, may be given in evidence?

[The CHIEF JUSTICE. Any act which shows the character of the transaction itself, in my opinion, may be given.

[Mr. Wickham. I understand the opinion of the court to be that we cannot be liable for the acts of others, though done within the district; no auxiliary acts can be given against us, and they are not entitled to go out of the district to show acts done elsewhere, against us?

[Mr. M'Rae. If we shall offer evidence that will be proper to submit to a jury, to prove where he did commence this enterprize, at any period whatever, it is not necessary that we should show that he remained on Blannerhasset's Island all the time. But seeing the enterprize was actually commenced, we shall be able to satisfy a jury that, when Burr was on the island, he did there actually project it, and did agree with Blannerhasset as to its progress, which was afterwards carried on, we ought certainly then to be at liberty to go out of the district to show that he was the principal person concerned in it. I do not suppose it necessary for us to show that all the means were provided by him.

[The CHIEF JUSTICE. There is no doubt which I had at the commencement of this case (which I do not now suggest to make a question of) it relates to the indictment, and consequently to a particular part of the evidence, particularly to the words of the statute "beginning and setting on foot an expedition." I do doubt whether it is not necessary to show in the indictment how the expedition was begun. I do not know that it is necessary to set forth the principal means in the indictment. It is in itself, an extremely vague term, but if it is a necessary one, surely the particular manner of beginning must be showed. I think, however, it ought to be laid in the indictment, and if so, that is a strong reason why it ought to be shown by evidence.

[The counsel on both sides were ordered to be furnished with copies of the opinion, and the court adjourned to Tuesday, ten o'clock.

[Tuesday, September 15.

[Mr. Hay said, that the counsel for the prosecution had agreed to go on as well as they could, for that they had drawn such a construction from the opinion as to excite them to suppose that they had sufficient evidence yet remaining to produce a conviction of the person accused, without interfering with the opinion of the court. He was stating some of the points laid down by the court, as far as we were able to hear him (which was extremely difficult), when Mr. Botts interfered to explain what were the limits set by the court, upon which he dwelt at some length, and repeated most of the arguments before used, as to the absence of Mr. Burr, and the evidence offered respecting conversations held between him and others. Indeed, he took a brief review of the whole opinion, and concluded, upon the whole, that the absence of Mr. Burr rendered all evidence which it appeared could be produced irrelevant; none had been offered, and he defied the prosecution to offer a particle,—for, from the whole review of the opinion, it was not within the compass of the heart of man to produce a conviction.

[Mr. Martin offered a few observations favorable to the production of any evidence which the prosecution could produce: if they exceeded the bounds which the court had justly prescribed, it would then be due time to make objections, on which the court would determine.

[Much desultory conversation ensued, when Richard Neale was again called. and asked whether he was on the island on the night of Blannerhasset's departure. "A. I was not. I left the country in October, and know nothing of it."

[James McDowell was then called and sworn.

[Mr. Burr stated that this witness was introduced for the purpose of proving an interview between him and the accused at the mouth of Cumberland river, where the accused stated to him the object of the expedition. The witness commenced his evidence by saying that he should begin up at Wheeling and proceed downwards to Cumberland where he first saw Col. Burr, when Col. Burr interrupted him by observing that he understood that this was offered as corroborative or auxiliary testimony, but auxiliary to what? They ought first to demonstrate acts done at the island, before they attempt to prove what was done, or (what is worse) said, out of the district.

[Mr. Wirt went into a review of the opinion to support the propriety of offering this species of evidence, and contended that, before they could come to the substantive charge, they ought to be permitted to show the parts so nearly attached as this was. On this ground was General Eaton's testimony admitted, because it bore direct on the charge laid in the indictment, and equally intimate

were the acts at Cumberland. Under the act of congress, the charge is, providing means, &c. Now, was not the assumption of the command of those engaged in this expedition a material article in the means provided or providing? Here was the right to command acknowledged. It is not our meaning to say that there he began the expedition; he provided most of his means elsewhere, but there he met with his men, and there he headed them (he referred to Vaughan's case.) The mouth of Cumberland transaction was one link in the great chain; it commenced perhaps with what occurred between him and General Eaton, and proceeded by degrees till men, arms, &c., were procured, but the superintendence of Burr was discoverable everywhere: he projected and hastened on the scheme, as will appear. The transactions at Cumberland cannot be abstracted more than others of equal importance. Such corroborative testimony as that now offered, he contended, was even let in in capital cases, and could not be excluded without manifest injustice to the prosecution, because of its very intimate connection with the whole. There was a wide difference between a mere connection, and a man having the sovereign command of a criminal transaction (as was now attempted to be proved). The beginning was with General Eaton,—the consummation was to be somewhere else. It would be proved that Burr not only began, but brought the thing about so far as it went; he was the life and prime mover of the whole. Mr. Wirt went into some reasoning and elucidation of the propriety of this evidence; though it was no positive proof of his guilt under the indictment, yet he insisted it was strong circumstantial evidence that these means were his means, and that the evidence was within the meaning of the court, as far as he understood the opinion.

[Mr. Botts expressed his extreme surprise at the light in which the gentlemen had represented the opinion of the court: he made some strong strictures on Mr. Wirt's representations of it, and admired the judge's patience to sit there and hear it. He then quoted some parts of the opinion, and made some strong eulogistic remarks upon it, after which he compared it with the point in dispute; as to Burr's presence, &c. (which has so often been the topic). It was stated to be one continued act. Be it so; let it be supposed to be an act of unanimity and continuity, and how would it then stand? A distinct offence was charged to have been committed by Col. Burr on the island, but, instead of its being done by him, on the island, it appeared to have been done by others, and evidence of words used elsewhere were brought as corroborative, to prove what was done where he was not! By what kind of ingenuity could anything done in Cumberland be transported to Blannerhasset's Island, when the act, though laid there, was already disproved.

[MARSHALL, Chief Justice. I certainly should not have sat so patiently to hear the elaborate arguments which were offered, if I had not had a hope that the opinion which was afterwards delivered would have settled the point; an opinion which I thought was given so clear as to render it unnecessary to give another opinion upon the same point. It appears to me now that it would be unnecessary were it not for the vaguity of the law, and different understandings of gentlemen as to the terms "beginning and setting on foot" an expedition. They vary in opinions amazingly on those terms. Now, what is "beginning"? There must be some definite meaning affixed to the word, or I do not know how a court is to act upon the law. It means something, or else it is too vague for a court to punish those who have committed the act, or are the subjects of prosecution. As I before stated, an "expedition" must mean one of two things; it must indicate the march of a military force or army from one place to another, or it must be considered as a military armament substantively. Now, its natural and direct meaning must be the movement of a military armament, and not the armament itself. Now, when this movement takes place the expedition is said to begin; the march is said to have commenced. But the word also means an armament that moves, rather than the movement of that armament. However, I did not undertake to decide this question of the meaning, because I wished not to fix a positive meaning to terms when they relate to a law that may possibly undergo a revision, particularly when I had no precedent nor assistance in it. But if it be the movement of an armament itself, when that armament existed as such, then as I said before I could not distinguish between providing the means of that armament and the beginning of it. I cannot conceive what it is, nor can I conceive any fact that will amount to a "beginning" this armament, unless it is in the provision of the means, or of some means. Furnishing money or enlisting men may be considered as providing means. This, then, must be beginning the expedition. It must either mean this, or it must mean the march. If it means the march, then the expedition was brought down by Mr. Tyler from Beaver, where they first assembled, and afterwards rested at Blannerhasset's Island, whence they proceeded lower down. If it be expedition, and the meaning of the word is the march of the armament, then the proof is positive that it did not begin at Blannerhasset's Island. If the meaning is the provision of the armament, then the beginning of the expedition is the place where the first means were provided. Taking then, the word in one or the other meaning, it certainly appears to me that the testimony produced by the attorney of the United States disproves his own charge, for that it was not begun at Blannerhasset's Island, where the charge is

laid in the indictment. The beginning, then, is out of the question.

[The question then is whether the means were provided or not on Blannerhasset's Island. If there be any testimony that goes to prove this. I certainly am not at liberty to refuse it. But gentlemen will consider whether they are not wasting the time and money of the United States, and of all those persons who are forced to attend here, whilst they are producing such a mass of testimony which does not bear upon the cause. Any arguments on the principle which was stated, that the testimony respecting means provided elsewhere. supporting this charge, I am willing to hear. If the opinion of the court before given can be proved to be erroneous, I shall be very happy to hear it pointed out. because I wish to be as correct as possible; but, if these principles are not erroneous, why do gentlemen bring witnesses forward in direct opposition to them? I can ascribe no other reason to it. than because the law does not give definite ideas on the subject of its own provisions. The truth is. the words of the law must be taken to retrospect to the origination of the plan. For instance, General Eaton states that in Washington the accused laid before him a certain plan, when he said that he had sufficient means. &c. Now, if those means could be discovered, it certainly shows that the beginning of this expedition was in Washington. but the indictment states it to be on Blannerhasset's Island. Now, unless the fact itself shall be proved. how can there be evidence given of motives, yet undiscovered?] [7]

It is, then, the opinion of the court that the declarations of third persons not forming a part of the transaction. and not made in the presence of the accused, cannot be received in evidence in this case. That the acts of accomplices. except so far as they prove the character or object of the expedition. cannot be given in evidence. That the acts of the accused, in a different district. which constitute in themselves substantive causes for a prosecution. cannot be given in evidence, unless they go directly to prove the charges laid in the indictment. That any legal testimony which shows the expedition to be military, or to have been designed against the dominions of Spain, may be received.

The attorney of the district finding in the progress of the cause that this decision excluded almost the whole of his testimony, on the 15th of September moved the court to discharge the jury. This was objected to by the defendant, who insisted upon a verdict. THE COURT being of opinion that the jury could not, in this stage of the case, be discharged without mutual consent, and that they must give a verdict, they accordingly retired. and not long after returned with a verdict of "Not guilty."

[7] [From 3 Carpenter's Report of Burr's Trial, 93.]